IN THE UNITED STATES DISTRICT
FOR THE DISTRICT OF NEW JERSEY

<table>
<tr><td>

ESTATE OF CLAYTON SMITH, et al.,

        Plaintiffs,

  v.

CITY OF WILDWOOD, et al.,

        Defendants.

</td><td>

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 16-0925 (JBS-JS)

**MEMORANDUM
OPINION**

</td></tr>
</table>

**SIMANDLE**, District Judge:

Plaintiff Liudmila Smith, both as the administratrix of the estate of Clayton Smith and in her own right, (hereinafter "Plaintiff") brings this action against Defendants City of Wildwood, James Neill, Louis Raniszewski, Ryan Troiano, and Aldo Sacco (hereinafter, collectively, "Defendants")[1] alleging a variety of claims arising from the unfortunate death of Clayton Smith on February 19, 2016. (See Complaint [Docket Item 1].) This matter comes before the Court by way of Defendants' motion for summary judgment. (See Motion for Summary Judgment [Docket Item 41].) Plaintiff opposes Defendants' motion. (See Brief in Opposition (hereinafter "Pl.'s Opp'n") [Docket Item 44].) Defendants assert six separate bases for granting summary

_____

[1] The Court shall hereinafter refer to Defendant City of Wildwood as "City Defendant" and to the individual defendants, collectively, as "EMT Defendants."

judgment in their favor. (See generally Brief in Support of
Motion for Summary Judgment (hereinafter "Defs.' Br.") [Docket
Item 41-1].) Defendants allege that:

1. EMT Defendants are granted immunity by N.J.S.A.
   § 26:2K-29;
2. EMT Defendants are granted immunity by N.J.S.A.
   § 26:2K-14;
3. Plaintiff has failed to provide an Affidavit of
   Merit, pursuant to N.J.S.A. § 2A:53A-27;
4. Plaintiff has not shown a policy or custom
   sufficient to prove a Monell claim against City
   Defendant;
5. City Defendant is immune if EMT Defendants are
   found to be immune under either N.J.S.A.
   §§ 26:2K-29 or 26:2K-14;
6. Defendants are not liable for punitive damages
   under either New Jersey or federal law.

(See generally id.) The Court will address each of these bases
in turn, below. The Court finds as follows:

1.   **Factual and Procedural Background.**[2] On February 23,
2014, at 7:10 a.m., Plaintiff was awoken by a noise from the

---

[2] The factual and procedural background of this case is only
presented insofar as it is necessary for the determination of the
present motions. The Court distills this undisputed version of
events from the parties' statements of material facts, affidavits,
and exhibits, and recounts them in the manner most favorable to
Plaintiff, as the party opposing summary judgment. The Court
disregards, as it must, those portions of the parties' statements
of material facts that lack citation to relevant record evidence
(unless admitted by the opponent), contain improper legal argument
or conclusions, or recite factual irrelevancies. See generally L.
Civ. R. 56.1(a); see also Kemly v. Werner Co., 151 F. Supp. 3d.
496, 499 n.2 (D.N.J. 2015) (disregarding portions of the parties'
statements of material facts on these grounds); Jones v. Sanko
Steamship Co., Ltd., 148 F. Supp. 3d 374, 379 n.9 (D.N.J. 2015)
(same). Where not otherwise noted, the facts are undisputed by the
parties.

bathroom. (See Plaintiff's Answers to Initial Interrogatories
(hereinafter "Pl.'s Answers") [Docket Item 41-6], ¶ 22.) Upon
entering the bathroom, Plaintiff found her husband, Clayton
Smith, on the bathroom floor, breathing hard; she immediately
called 911. (See id.) At 7:12 a.m., Wildwood Rescue Unit #391
(hereinafter "Unit #391") and Wildwood Fire Department Engine
#338 (hereinafter "Engine #338") were dispatched to respond to
Plaintiff's call. (See Wildwood Fire Department Patient Record
[Docket Item 41-3], 1; Wildwood Fire Department Report [Docket
Item 41-4], 2 on the docket.) Unit #391 was driven by Defendant
Neill and was carrying Defendant Raniszewski; Engine #338
included Defendant Sacco; the record is unclear as to how
Defendant Troiano arrived at the scene.[3] (See Wildwood Fire
Department Patient Record [Docket Item 41-3], 1; Wildwood Fire
Department Report [Docket Item 41-4], 2 on the docket.) The
times that the vehicles arrived at the Smiths' residence is
disputed; Plaintiff contends that Unit #391 arrived around 7:22
a.m. and that Engine #338 arrived at sometime thereafter. (See

---

[3] The documents relied upon by Defendants for the present motion
offer conflicting information regarding how Defendant Troiano
arrived at Smiths' residence, indicating that he arrived both as
part of Unit #391 and as part of Engine #338. (Compare Wildwood
Fire Department Patient Record [Docket Item 41-3], 1 with Wildwood
Fire Department Report [Docket Item 41-4], 5 on the docket.)
However, Plaintiff does not contest Defendants' assertion that
Defendant Troiano arrived on Engine #338. (See Plaintiff's
Responsive Statement of Material Facts [Docket Item 44-1], 14 on
the docket, ¶ 13.)

Transcript of the Deposition of Liudmila Smith (hereinafter "Smith Dep.") [Docket Item 44-2], 37:21-23.) Upon Unit #391's arrival, the parties agree that Plaintiff directed them to the bathroom where her husband was on the floor "unconscious, unresponsive, and not breathing," (Wildwood Fire Department Patient Record [Docket Item 41-3], 3). Plaintiff contends, however, that she was never asked about Mr. Smith's cardiac health history. (See Smith Dep. [Docket Item 44-2], 40:18-41:19.) The members of Unit #391 then moved Mr. Smith from the bathroom into the living room and checked for his pulse and breathing, neither of which were detected. (Wildwood Fire Department Patient Record [Docket Item 41-3], 3.) At this point the Engine #338 arrived, and its personnel joined the members of Unit #391 in the Smiths' living room. (See id.) Plaintiff contends that EMT Defendants did not provide Mr. Smith with any cardiopulmonary resuscitation (hereinafter "CPR") or supplemental oxygen while he was in the Smiths' apartment, despite her requests to provide care. (See Pl.'s Answers [Docket Item 41-6], ¶ 22.) EMT Defendants loaded Plaintiff onto a stretcher and transported him from the living room into either an ambulance or a fire truck. (See Smith Dep. [Docket Item 44-2], 46:16-48:8.) Four separate witnesses have testified that no CPR or supplemental oxygen was being provided to Mr. Smith as he was being transported to the vehicle. Once inside the vehicle,

4

EMT Defendants administered two separate shocks to Mr. Smith using an automated external defibrillator. (Wildwood Fire Department Patient Record [Docket Item 41-3], 3.) Plaintiff asserts that it then took another 25-30 minutes for EMT Defendants to begin driving Mr. Smith to the hospital, where he was later pronounced dead. (See Pl.'s Answers [Docket Item 41-6], ¶ 22.)

2. On February 19, 2016, Plaintiff filed the instant action. (See Complaint [Docket Item 1].) Defendants filed their Answer to Plaintiff's Complaint on May 12, 2016. (See Answer [Docket Item 11].) On October 31, 2017, the parties stipulated to the dismissal, with prejudice, of Counts Two and Five of Plaintiff's Complaint. (See Stipulation of Dismissal [Docket Item 40].) The remaining counts of Plaintiff's Complaint allege the following:

- Count One: EMT Defendants violated Mr. Smith's "constitutional rights, particularly his right to be free of state-created danger under the Due Process Clause;"
- Count Three: EMT Defendants "violated Mr. Smith's "constitutional rights, particularly his right not to be put in a class of one under the Equal Protection Clause;"
- Count Four: EMT Defendants violated Mr. Smith's "constitutional rights, particularly his due process right to be free of state-created danger under Article I, Paragraph I of the Constitution of the State of New Jersey;"
- Count Six: EMT Defendants violated Mr. Smith's "constitutional rights, particularly his equal protection right not to be put in a class of one under

Article I, Paragraph I of the Constitution of the State of New Jersey;"
- Count Seven: EMT Defendants "caused the wrongful death of [Mr. Smith]" and City Defendant is "vicariously liable for the wrongful death of [Mr. Smith], caused by the acts of their employees, [EMT Defendants];"
- Count Eight: EMT Defendants' negligence "was a substantial contributing factor to the loss of the last clear chance to save the life of [Mr. Smith]" and City Defendant is "vicariously liable for the negligent acts of [its] employees, [EMT Defendants];"
- Count Nine: EMT Defendants' negligence "was a direct and proximate cause of bystander emotional distress under <u>Portee v. Jaffe</u> to Plaintiff" and City Defendant is "vicariously liable for the negligent acts of [its] employees, [EMT Defendants]."

(Complaint [Docket Item 1], ¶¶ 84, 86, 88, 90, 92-97.) Plaintiff is seeking damages from Defendants for compensatory damages, punitive damages, costs, and fees. (<u>Id.</u> at 12.)

3. Defendants filed the present motion for summary judgment, arguing that they are entitled to summary judgment in their favor as to each Count of the Complaint, for the reasons outlined, <u>supra</u>. (<u>See</u> <u>generally</u> Defs.' Br. [Docket Item 41-1].) Plaintiff filed a brief in opposition. (<u>See</u> Pl.'s Br. [Docket Item 44].) Defendants filed a reply. (<u>See</u> Defendants' Reply Brief (hereinafter "Defs.' Reply") [Docket Item 48].) Plaintiff was granted leave to file a sur-reply, (<u>see</u> Text Order [Docket Item 50]), and did so. (<u>See</u> Sur-Reply Brief [Docket Item 51].) The pending motion is now fully briefed and ripe for disposition. The Court will decide the motion without oral argument, pursuant to Fed. R. Civ. P. 78.

4.    **Standard of Review.** At summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In reviewing a motion for summary judgment, the court is required to examine the evidence in light most favorable to the non-moving party and resolve all reasonable inferences in that party's favor. Scott v. Harris, 550 U.S. 372, 378 (2007); Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014).

5.    A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The non-moving party "need not match, item for item, each piece of evidence proffered by the movant," but must present more than a "mere scintilla" of evidence on which a jury could reasonably find for the non-moving party. Boyle v. Cnty. of Allegheny, Pa., 139 F.3d 386, 393 (3d Cir. 1998) (quoting Anderson, 477 U.S. at 252).

6. **Discussion.** The Court shall address Defendants' six
bases for summary judgment, in turn.

a. <u>Whether EMT Defendants are entitled to immunity
under N.J.S.A. § 26:2K-29.</u> Defendants assert that EMT Defendants
are statutorily immune from liability, under N.J.S.A. § 26:2K-
29, for their acts or omissions in relation to their treatment
of Mr. Smith.[4] (Defs.' Br. [Docket Item 41-1], 20-23 on the
docket.) N.J.S.A. § 26:2K-29 states that

> No EMT-intermediate, licensed physician,
> hospital or its board of trustees, officers
> and members of the medical staff, nurses or
> other employees of the hospital, or officers
> and members of a first aid, ambulance or
> rescue squad shall be liable for any civil

---

[4] Plaintiff asserts that EMT Defendants cannot be immune from suit
regarding claims brought under federal law by virtue of an immunity
created by New Jersey statute, due to the federal Supremacy Clause.
(See Defs' Opp'n [Docket Item 44], 1-2.) Defendants contend that
New Jersey's statutory immunity under N.J.S.A. § 26:2K-29 applies
equally to causes of action under state and federal law, because
"[t]he statutes do not make any discernable [differentiation]
between [] state and federal claims." (Defs.' Reply [Docket Item
48], 1.) However, it is well established that "[t]he elements of,
and the defenses to, a federal cause of action are defined by
federal law." <u>Howlett v. Rose</u>, 496 U.S. 356, 375-76 (1990) (citing
<u>Monessen Sw. Ry. Co. v. Morgan</u>, 486 U.S. 330, 335 (1988);
<u>Chesapeake & Ohio Ry. Co. v. Kuhn</u>, 284 U.S. 44, 46-47 (1931)).
Furthermore, "[a] construction of [a] federal statute which
permitted a state immunity defense to have controlling effect would
transmute a basic guarantee into an illusory promise; and the
supremacy clause of the Constitution insures that the proper
construction may be enforced. <u>Martinez v. State of Cal.</u>, 444 U.S.
277, 284, 100 S. Ct. 553, 558, 62 L. Ed. 2d 481 (1980) (citing
<u>McLaughlin v. Tilendis</u>, 398 F.2d 287, 290 (7th Cir. 1968)).
Therefore, Defendants' motion shall be denied insofar as it seeks
summary judgment in Defendants' favor, by virtue of immunity
granted under N.J.S.A. § 26:2K-29, with respect to claims brought
under federal law.

> damages as the result of an act or the omission
> of an act committed while in training for or
> in the rendering of intermediate life support
> services **in good faith** and in accordance with
> this act.

N.J.S.A. § 26:2K-29 (emphasis added). New Jersey courts have

held that

> "Good faith" has been defined as "honesty of
> purpose and integrity of conduct without
> knowledge, either actual or sufficient to
> demand inquiry, that the conduct is wrong."
> Marley v. Borough of Palmyra, 193 N.J. Super.
> 271, 294, 473 A.2d 554 (Law Div. 1983). The
> issue of whether a person acted in good faith
> is often a question of fact which should be
> decided at a plenary hearing. Fielder v.
> Stonack, 141 N.J. 101, 132, 661 A.2d 231
> (1995). Summary judgment, however, is
> appropriate when the employee demonstrates
> that his/her actions "were objectively
> reasonable or that [he/she] performed them
> with subjective good faith." Canico v.
> Hurtado, 144 N.J. 361, 365, 676 A.2d 1083
> (1996). This test recognizes that even a
> person who acted negligently is entitled to a
> qualified immunity, if he acted in an
> objectively reasonable manner. Id. at 366, 676
> A.2d 1083.

Frields v. St. Joseph's Hosp. & Med. Ctr., 702 A.2d 353, 354–55

(App. Div. 1997). Therefore, in order for EMT Defendants to

receive summary judgement in their favor, the burden is placed

on EMT Defendants to "demonstrate[] that [their] actions 'were

objectively reasonable or that [they] performed them with

subjective good faith.'" Id. at 355 (citing Canico, 676 A.2d

1083, 1085 (N.J. 1996)). As an initial matter, Defendants have

not provided any documentary evidence in connection with the

present motion pertaining to any of EMT Defendants' subjective mindset at the time of the incidents in question.[5] Therefore, Defendants have not met their burden with regards to subjective good faith, and the Court shall not grant Defendants' motion on these grounds. Alternatively, Defendants may establish that they are entitled to immunity under N.J.S.A. § 26:2K-29 if they can demonstrate that their actions were "objectively reasonable." Frields, 702 A.2d at 354–55. However, at the summary judgment stage, courts are to refrain from making credibility determinations and weighing the evidence, and are to draw all reasonable inferences in favor of the nonmoving party. Anderson, 477 U.S. at 255. In this case, Plaintiff has testified that EMT Defendants did not ask her about Mr. Smith's medical history and did not provide any life-saving care to Mr. Smith until they had taken him from the Smiths' residence and placed him in an EMT vehicle. (See Smith Dep. [Docket Item 44-2], 40:18-41:19; Pl.'s Answers [Docket Item 41-6], ¶ 22.) Additionally, Plaintiff has testified that she was actively pleading with EMT Defendants to

---

[5] The only information submitted to the Court that recorded EMT Defendants' version of events were the official reports filed by Unit #391 and Engine #338 and certain pages from the deposition of Defendant Neill. (See Wildwood Fire Department Patient Record [Docket Item 41-3], 1; Wildwood Fire Department Report [Docket Item 41-4], 2 on the docket; Deposition of James Neill [Docket Item 44-7]; Deposition of James Neill [Docket Item 46-4].) However, none of these records offer any indication of EMT Defendants' subjective mindsets during the incidents in question, nor has any party directed the Court's attention to such. (See id.)

provide more care to Mr. Smith, but that EMT Defendants ignored her pleas. (See id.) Plaintiff has also supplied three witnesses who have testified that EMT Defendants were not providing any life-saving care to Mr. Smith while they were transporting him from the Smiths' residence into one of the EMT vehicles. (See generally Transcript of Deposition of Stephanie Johnson [Docket Item 44-4]; Transcript of Deposition of Terri Stubbs [Docket Item 44-5]; Transcript of Deposition of Michael Goode [Docket Item 44-6].) Taking all reasonable inferences in favor of Plaintiff, as the nonmoving party, the Court cannot at this time say that no reasonable jury could find that EMT Defendants' behavior was objectively unreasonable. If Plaintiff's witnesses are believed, a jury could infer that little meaningful care was given by EMTs who did not display urgency in their efforts to revive an unconscious man for an extended period of time at the scene and before transporting him to the hospital, with no subjective explanation in the record from the Defendants about their mindset or intentions. Therefore, Defendants' motion summary judgment will be denied insofar as it seeks to assert statutory immunity under N.J.S.A. § 26:2K-29.

   b. Whether EMT Defendants are entitled to immunity under N.J.S.A. § 26:2K-14. Defendants assert that EMT Defendants are statutorily immune from liability, under N.J.S.A. § 26:2K-14, for their acts or omissions in relation to their treatment

of Mr. Smith.[6] (Defs.' Br. [Docket Item 41-1], 24-25 on the

docket.) N.J.S.A. § 26:2K-14 states that

> No mobile intensive care paramedic, licensed
> physician, hospital or its board of trustees,
> officers and members of the medical staff,
> nurses or other employees of the hospital,
> first aid, ambulance or rescue squad, or
> officers and members of a rescue squad shall
> be liable for any civil damages as the result
> of an act or the omission of an act committed
> while in training for or in the rendering of
> advanced life support services in good faith
> and in accordance with this act.

N.J.S.A. § 26:2K-14. As N.J.S.A. § 26:2K-14 contains a "good

faith" requirement, similar to the one found in N.J.S.A.

§ 26:2K-29, the Court will deny this portion of Defendants'

motion, for the same reasons it will deny the portions relating

to N.J.S.A. § 26:2K-29, set forth <u>supra</u>.[7]

---

[6] As noted, <u>supra</u>, state statutes, such as N.J.S.A. § 26:2K-14 cannot grant immunity for any claims brought under federal law. Therefore, Defendants' motion shall be denied insofar as it seeks summary judgment in Defendants' favor, by virtue of immunity granted under N.J.S.A. § 26:2K-14, with respect to claims brought under federal law.

[7] Defendants also assert, for the first time in their reply brief, that Defendant Neill is entitled to statutory immunity under N.J.S.A. § 26:2K-43. (<u>See</u> Defs.' Reply [Docket Item 48], 9.) N.J.S.A. § 26:2K-43 states that

> An EMT-D, First Responder-D, EMT-intermediate, licensed physician, hospital or its board of trustees, officers and members of the medical staff, nurses, paramedics or other employees of the hospital, or officers and members of a first aid, ambulance or rescue squad shall not be liable for any civil damages as the result of an act or the omission of an act committed while in training to

c.    Whether Plaintiff's negligence claims must fail

for lack of an Affidavit of Merit, pursuant to N.J.S.A.

§ 2A:53A-27. Defendants assert that they are entitled to summary

judgment in their favor with respect to all of Plaintiff's

claims resting on EMT Defendants' alleged negligence, because

Plaintiff failed to provide an Affidavit of Merit within 120

days of initiating this suit, as required by N.J.S.A. § 2A:53A-

27. (See Defs.' Br. [Docket Item 41-1], 26-28 on the docket.)

Plaintiff responds that an Affidavit of Merit is not required in

this case, because it falls within the "common knowledge"

exception. (See Pl.'s Opp'n [Docket Item 44], 5-9.) As this

Court has previously held, Affidavits of Merit

>           are "not required in common knowledge cases,"
>           Hubbard v. Reed, 168 N.J. 387, 396, 774 A.2d
>           495 (2002), where "jurors' common knowledge as
>           lay persons is sufficient to enable them,
>           using ordinary understanding and experience,
>           to determine a defendant's negligence without
>           the benefit of specialized knowledge or

---

>           perform, or in the performance of, cardiac
>           defibrillation in good faith and in accordance
>           with this act.

N.J.S.A. § 26:2K-43. The Court notes that is it inappropriate for
a party to state a new basis for relief in a reply brief,
nevertheless the Court shall consider this argument in the context
of the motion. N.J.S.A. § 26:2K-43 cannot grant immunity for any
claims made under federal law, for the reasons set forth supra.
With respect to Plaintiff's state law claims, N.J.S.A. § 26:2K-43
contains a "good faith" element, similar to those found in N.J.S.A.
§§ 26:2K-14 and 26:2K-29. Therefore, the Court will deny this
portion of Defendants' motion, for the same reasons it will deny
the portions relating to N.J.S.A. §§ 26:2K-14 and 26:2K-29, set
forth supra.

experts." <u>Estate of Chin by Chin v. St. Barnabas Med. Ctr.</u>, 160 N.J. 454, 469, 734 A.2d 778 (1999).

<u>Estate of Allen v. Cumberland Cty.</u>, 262 F. Supp. 3d 112, 116 (D.N.J. 2017). The Court went on to describe numerous instances where the common knowledge exception had been held to excuse the absence of an Affidavit of Merit:

> In <u>Natale v. Camden Cty. Corr. Facility</u>, 318 F.3d 575 (3d Cir. 2003), the court applied the common knowledge doctrine and excused the failure to file an AOM where an inmate at the Camden County Jail alleged medical malpractice when Prison Health Services at the Jail failed to administer insulin to him, a diabetic, during the first twenty-one hours of his incarceration, stating: "While laypersons are unlikely to know how often insulin-dependent diabetics need insulin, common sense—the judgment imparted by human experience—would tell a layperson that medical personnel charged with caring for an insulin-dependent diabetic should determine how often the diabetic needs insulin. No special expertise or expert testimony is needed to show, at the outset of a case, that the claim is not frivolous." <u>Id.</u> at 580.

> In <u>Mora v. U.S. Dep't of Homeland Sec. Immigration and Customs Enforcement</u>, No. 11-3321, 2013 WL 5180041, at *1, *7 (D.N.J. Sept. 13, 2013), the court applied the common knowledge doctrine where a person held in ICE custody complained that, after having been assaulted while in custody and sustaining "serious injuries throughout his entire body," 2013 WL 5180041 at *1, "he was never treated or given basic medical care for his injuries," finding relevant and analogous a precedent holding that "a physician's failure to diagnose a plaintiff's injuries . . . falls within the common knowledge exception." 2013 WL 5180041 at *7 (citing <u>Bullock v. Ancora</u>

> Psychiatric Hosp, No. 10-1412, 2011 WL
> 3651352, at *12 (D.N.J. Aug. 18, 2011)).
>
> In Grimes v. Corr. Med. Servs., No. 08-567,
> 2010 WL 503031, at *4 (D.N.J. Feb. 8, 2010),
> the court ruled that a group of inmates'
> claims of medical malpractice against the
> jail's medical services provider fell "within
> the common knowledge exception" because each
> plaintiff alleged "that the defendants failed
> to provide them with their prescribed
> medication in a timely manner[,]" citing other
> precedents where courts found that the common
> knowledge exception applied where defendants
> failed to timely provide plaintiffs with their
> prescribed medicines, or failed to follow the
> medical instructions of the plaintiffs'
> treating specialists. See Jackson v. Fauver,
> 334 F.Supp.2d 697, 743 (D.N.J. 2004); Bryan v.
> Shah, 351 F.Supp.2d 295, 302 (D.N.J. 2005);
> and Lopez v. Corr. Med. Servs., No. 04-2155,
> 2006 WL 1722584, at *4 (D.N.J. June 20, 2006).

Estate of Allen, 262 F. Supp. 3d at 116-17. Defendants respond

that "[w]ithout expert testimony, a jury could not reasonably

conclude that [EMT Defendants] had a duty to apply an oxygen

mask to [Mr.] Smith, or that they were negligent in [failing to

do] so." (Defs.' Reply [Docket Item 48], 8.) However, Defendants

only supply one case reference to support their assertion that

this case cannot fall within the common knowledge exception:

Sanzari v. Rosenfeld, 167 A.2d 625 (N.J. 1961). However, Sanzari

was a case revolving around a dentist's use of anesthetic

without having taken a detailed medical history from the

patient. While perhaps a jury could not know the duty expected

of a dentist administering anesthesia, and perhaps Defendants

are correct that a reasonable jury could not know precisely what actions were expected of EMTs, a reasonable jury could know that EMTs responding to a person who was unconscious and turning blue had a responsibility to do something to restore airflow and heartbeat in order to care for or resuscitate their patient. Therefore, taking all reasonable inferences in favor of Plaintiff's version of the timeline and EMT inactivity, the Court shall deny Defendants' motion for summary judgment insofar as it seeks summary judgment due to Plaintiff's failure to provide an Affidavit of Merit.

> d. Whether Plaintiff has shown a municipal policy or custom sufficient to establish a *Monell* claim against City Defendant. Defendants also assert that Plaintiff has not established the necessary elements for holding City Defendant municipally liable for violation of Plaintiff's constitutional rights under 42 U.S.C. § 1983 and Monell v. Department of Social Services, 436 U.S. 658 (1978). (See Defs.' Br. [Docket Item 44-1], 30-32 on the docket.) In response, Plaintiff states that this request is moot, because Plaintiff is not seeking to hold City Defendant liable for any civil rights violations under 42 U.S.C. § 1983 or Monell. (See Pl.'s Opp'n [Docket Item 44], 9.) Therefore, this portion of Defendants' motion is dismissed as moot.

e.   Whether City Defendant is entitled to immunity if EMT Defendants are found to be immune under either N.J.S.A. §§ 26:2K-29 or 26:2K-14. Defendants argue that City Defendant cannot be held liable for the acts or omissions of its employees if those employees are found to be immune under N.J.S.A. §§ 26:2K-14 or 26:2K-29. (See Defs.' Br. [Docket Item 44-1], 33-34 on the docket.) N.J.S.A. § 59:2-2(b) states that "[a] public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable." N.J.S.A. § 59:2-2(b). Defendants explicitly concede that such a theory requires that EMT Defendants be held to be immune in order for City Defendant to likewise be immune. (See Defs.' Br. [Docket Item 44-1], 34 on the docket.) However, as the Court will deny the present motion with respect to EMT Defendants' claims of statutory immunity, the Court shall also deny City Defendant's asserted immunity under N.J.S.A. § 59:2-2(b).

f.   Whether Defendants are liable for punitive damages under either New Jersey or federal law. Defendants assert that they are entitled to summary judgment in their favor with respect to any punitive damages under both New Jersey and federal law. (See Defs.' Br. [Docket Item 41-1], 35-36 on the docket.) Plaintiff does not appear to oppose Defendants' request with respect to dismiss the claim for punitive damages under New

17

Jersey law, therefore Defendants' motion, as it relates to punitive damages under New Jersey law, shall be granted. With respect to punitive damages under federal law, Plaintiff asserts that she is entitled to punitive damages as to her § 1983 claims, because a reasonable jury could find that EMT Defendants acted recklessly in their treatment of Mr. Smith. (See Pl.'s Opp'n [Docket Item 44], 9-10.) The Supreme Court has stated that "reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law, should be sufficient to trigger a jury's consideration of the appropriateness of punitive damages." Smith v. Wade, 461 U.S. 30, 51, (1983) (citing Adickes v. Kress & Co., 398 U.S. 144, 233, (1970) (Brennan, J., concurring and dissenting)). Additionally, the Third Circuit has stated that a "'defendant's conduct must be, at a minimum, reckless or callous. Punitive damages might also be allowed if the conduct is intentional or motivated by evil motive, but the defendant's action need not necessarily meet this higher standard.'" Springer v. Henry, 435 F.3d 268, 281 (3d Cir. 2006) (quoting Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir.1989)). Defendants agree that recklessness is sufficient for a jury to consider punitive damages under federal law at 42 U.S.C. § 1983. (See Defs.' Reply [Docket Item 48], 11.) Under the facts of this case, in the light most favorable to Plaintiff, as the nonmoving party, a

reasonable jury could conclude that EMT Defendants acted

recklessly by failing to inquire as to Mr. Smith's medical

history, failing to administer any care to him until he was

removed from the Smiths' residence, and failing to heed

Plaintiff's pleas to provide medical assistance to Mr. Smith.

However, as the Court will grant summary judgment in favor of

EMT Defendants with regard to all claims under § 1983, this

portion of Defendants' motion shall be dismissed as moot.

      7.   **The *DeShaney* standard.** Defendants also assert, for the

first time in their reply brief, that Plaintiff has failed to

make out a claim for relief under the "state-created danger"

constitutional cause of action under § 1983, as described in

DeShaney v. Winnebago County Department of Social Services, 489

U.S. 189 (1989).[8] (See Defs.' Reply [Docket Item 48], 1-4.)

Plaintiff contends that she has satisfied this standard. (See

Pl.'s Sur-Reply [Docket Item 51], 1-7.) In order to establish a

claim for relief under the "state-created danger" aspect of

§ 1983:

> a plaintiff must prove four elements: (1) the
> harm ultimately caused was foreseeable and
> fairly direct; (2) the state actor acted in
> willful disregard for the safety of the
> plaintiff; (3) there existed some relationship
> between the state and the plaintiff; and (4)

---

[8] The Court notes that is it inappropriate for a party to state a
new basis for relief in a reply brief; nevertheless, the Court
shall consider this argument in the context of the motion, since
both sides have briefed the new issue.

> the state actors used their authority to
> create an opportunity that otherwise would not
> have existed for [harm] to occur.

Estate of Smith v. Marasco, 318 F.3d 497, 506 (3d Cir. 2003)

(citing Kneipp v. Tedder, 95 F.3d 1199, 1208 (3d Cir. 1996)).

   i.   Whether "the harm ultimately caused was
foreseeable and fairly direct." Defendants assert, without any

support by way of reference to caselaw or to the factual record,

that "Defendants did not cause any harm to [Plaintiff] or

decedent that was foreseeable and fairly direct." (Defs.' Reply

[Docket Item 48], 4.) Plaintiff responds that EMT Defendants'

"failure to perform any rescue services . . . lessened the

decedent's chances of surviving a heart attack," which is a harm

that is "fairly foreseeable and fairly direct." (Pl.'s Sur-Reply

[Docket Item 51], 2 (citing Rivas v. City of Passaic, 365 F.3d

181, 194-5 (3d Cir. 2004)).) The Court finds that, taking all

reasonable inferences in the light most favorable to the

Plaintiff, a reasonable jury could find that the harm associated

with failing to care for Mr. Smith's heart attack is foreseeable

and fairly direct.

   ii.   Whether "the state actor acted in willful
disregard for the safety of the plaintiff." Defendants assert

that "[i]n cases where the state actor is acting with urgency a

'shocks the conscience' standard[,] rather than a 'willful

disregard' standard applies," and that the facts of this case

"do not shock the conscience of the court." (Defs.' Reply
[Docket Item 48], 3-4 (citing <u>Brown v. Commonwealth of Pa, Dep't</u>
<u>of Health Emergency Med. Servs. Training Inst.</u>, 318 F.3d 473,
480 (3d Cir. 2003)).) Plaintiff appears to contest this
contention, but does so by citing to <u>Rivas</u>, which itself cited
to Brown and applied the "shocks the conscience" standard. (<u>See</u>
Pl.'s Sur-Reply [Docket Item 51], 2 (citing <u>Rivas</u>, 365 F.3d at
195-96 (citing <u>Brown</u>, 318 F.3d at 480-81)).) However, taking
into account all of the facts of this case, recited <u>supra</u>, and
taking all reasonable inferences in the light most favorable to
Plaintiff, it is possible that a reasonable jury could find that
EMT Defendants' refusal to provide emergency medical services to
Mr. Smith, in spite of Plaintiff's urgings, "shocks the
conscience" in a manner extending beyond simple negligence.

    iii.    <u>Whether "there existed some relationship between</u>
<u>the state and the plaintiff."</u> Defendants assert that "Plaintiff
cannot prove that there was contact between the parties such
that [Plaintiff] and the decedent were foreseeable victims in
the tort sense." (Defs.' Reply [Docket Item 48], 4.) Plaintiff
response that this factor is satisfied by EMT Defendants
"responding to a 911 call to provide medical care to [Mr.
Smith]." (Pl.'s Sur-Reply [Docket Item 51], 7 (citing <u>Rivas</u>, 365
F.3d at 197).) The Third Circuit held in <u>Rivas</u> that

a jury could find that Mr. Rivas was a member
of a "discrete class" of individuals subjected
to a potential harm caused by [EMTs] Garcia
and Rodriguez's actions. The EMTs were
responding to a 911 call. The very purpose of
their visit to the Rivas household was to
provide medical care to Mr. Rivas and to
reduce, to the extent possible, the amount of
danger in which he found himself as a result
of his seizure. If the jury credits Officer
Callaghan's testimony that he and Officer
Slater were told by the EMTs that Mr. Rivas
physically assaulted Rodriguez but were not
given any information about his medical
condition, it is foreseeable that Mr. Rivas
would be among the "discrete class" of persons
placed in harm's way as a result of Garcia and
Rodriguez's [failure to inform the police of
Mr. Rivas' medical condition]. See Morse [v.
Lower Merion Sch. Dist.], 132 F.3d [902,] 913
[(3d Cir. 1997)] (explaining that "[t]he
primary focus when making . . . [the
relationship] determination is
foreseeability").

Rivas v. City of Passaic, 365 F.3d 181, 197 (3d Cir. 2004). In

this case, it is possible that a reasonable jury could find,

taking all reasonable inferences in the light most favorable to

Plaintiff, that by responding to a 911 call and then taking

custody of Mr. Smith, EMT Defendants had a sufficient

relationship with Mr. Smith to make him a foreseeable victim of

their actions.

     iv.Whether "the state actors used their authority to

create an opportunity that otherwise would not have existed for

[harm] to occur." Defendants assert that "Defendants did not use

their authority to create an opportunity which would otherwise

not have existed, to cause harm." (Defs.' Reply [Docket Item 48], 4.) Plaintiff responds that, in Rivas "the EMT[s'] abandonment of control over the situation, . . . when taken together with the other circumstances, created an opportunity for harm which would not have otherwise existed." (Pl.'s Sur-Reply [Docket Item 51], 7 (citing Rivas, 365 F.3d at 197).) However, in Rivas, the EMTs abandoned control of the situation to police officers without telling those officers of Mr. Rivas' medical condition. In this case there are no such facts. There is no evidence that EMT Defendants at any time abandoned control of the situation; instead, the parties appear to agree that Mr. Smith remained in their custody until he reached the hospital. Additionally, there is no allegation that any EMT Defendants withheld information about the situation from others in a way that created a danger to Mr. Smith, nor that they disregarded Mr. Smith in order to attend to some other matter. It is tragic that Mr. Smith suffered a heart attack, but that danger was not created by EMT Defendants, nor did they create the opportunity for any danger that otherwise would not have existed. No reasonable jury could find Plaintiff's evidence satisfies this fourth element. Therefore, the Court finds that Plaintiff has failed to establish her claim for relief under the "state-created danger" constitutional claim under § 1983, as described in DeShaney v. Winnebago County Department of Social Services,

489 U.S. 189 (1989) and its progeny, and summary judgment will be granted in Defendants' favor in relation to all such claims.

    8.   **Conclusion.** For the reasons stated above, Defendants' motion for summary judgment [Docket Item 41] will be granted in part, denied in part, and dismissed as moot in part. An accompanying Order will be entered.


**September 27, 2018**          **/s Jerome B. Simandle**
Date                                    JEROME B. SIMANDLE
                                           U.S. District Judge